# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION

## DOCKET NO. 3:09-cv-66-FDW

| | |
|---|---|
| JEWEL C. DRINKARD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | ORDER |
| ) | |
| WALNUT STREET SECURITIES, INC., ) | |
| ) | |
| Defendant. ) | |
| ) | |

THIS MATTER comes now before the Court upon Defendant's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. No. 6). Defendant's Motion is GRANTED IN PART and DENIED IN PART. Defendant's Motion for Hearing (Doc. No. 8) is DENIED.

## BACKGROUND

According to Plaintiff's Complaint, beginning around 1998 the now-deceased James Hollingsworth attended prayer meetings and church breakfasts with Plaintiff's husband, David Drinkard. Hollingsworth then approached and became acquainted with the Plaintiff in a similar manner. The alleged motivation for these overtures of friendship was to build a relationship of trust, through commonly held religious and moral beliefs, and to use that relationship to entice Plaintiff and her husband to invest in ETS Payphones, Inc. ("ETS"), an investment that was eventually exposed as a fraudulent Ponzi scheme.[1] Plaintiff invested a total of $91,000 in ETS. Plaintiff's

---

[1] "A fraudulent investment scheme in which money contributed by later investors generates artificially high dividends for the original investors, whose example attracts even larger investments. Money from the new investors is used directly to repay or pay interest to earlier investors, usu. without any operation or revenue-producing activity other than the continual raising of new funds." Black's Law Dictionary (West 2004).

Complaint alleges that Hollingsworth was working for Marie Jolly, a/k/a Marie Foil ("Foil"), and her company Foil & Associates. The Complaint further alleges that Foil was a registered representative, acting with agency authority, of Walnut Street Securities, Inc., the Defendant in this action. Thus, the Complaint alleges that Defendant is liable for the fraudulent actions of Hollingsworth and Foil through either agency authority or ratification.

In August 2000, ETS stopped sending dividends to Plaintiff. Then, on September 11, 2000, ETS filed for bankruptcy. Plaintiff was identified as a creditor and received notice of the bankruptcy. On June 28, 2002, Foil filed bankruptcy in her individual capacity. Although Plaintiff does not dispute that she was on notice of these bankruptcy proceedings, she claims that she was not aware of Defendant's alleged involvement with ETS and the Ponzi scheme until "late 2006." Plaintiff's Complaint was originally filed in the Superior Court Division of Mecklenburg County on January 16, 2009, and was removed to this Court on February 20, 2009.

## STANDARD

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While a complaint need not contain detailed factual allegations in order to survive a 12(b)(6) motion, the plaintiff must plead enough to give the defendant "fair notice" of the claim and "the grounds upon which it rests. . . ." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 554-556 (2007). As the Supreme Court explained in Twombly, to survive a Rule 12(b)(6) challenge a complaint must allege "enough facts to state a claim to relief that is plausible on its face." Id. at 570. "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 563.

When conducting a 12(b)(6) analysis, the court "must accept as true all of the factual allegations contained in the complaint." Erickson v. Pardus, 127 S.Ct. 2197, 2200 (2007); G.E. Inv. Private Placement v. Parker, 247 F.3d 543, 548 (4th Cir. 2001). However, a court need not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." Veney v. Wyche, 293 F.3d 726, 730 (4th Cir. 2002). A plaintiff must do more than allege "a legal conclusion couched as a factual allegation." Twombly, 550 U.S. at 555 (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)).

## DISCUSSION

Defendant's principle argument is that the alleged fraud, negligent misrepresentation, etc., took place between the time frame of 1998-2000, well outside the standard three-year statute of limitations period, see N.C. Gen. Stat. § 1-52(5), (9), or the four-year period for claims of unfair and deceptive trade practices, see N.C. Gen. Stat. § 75-16.2. Plaintiff, on the other hand, contends that she had no knowledge of Defendant's involvement until late 2006 and therefore, under the discovery rule, the statute of limitations period should not begin until that time. The general rule under North Carolina law is that "when fraud should be discovered in the exercise of reasonable diligence is a question of fact for the jury." State Farm Fire and Cas. Co. v. Darsie, 589 S.E.2d 391, 397 (N.C. App. 2003). "However, where the evidence is clear and shows without conflict that the claimant had both the capacity and opportunity to discover the fraud but failed to do so, the absence of reasonable diligence is established as a matter of law." Id.

Two key facts convince the Court that Plaintiff was definitively on inquiry notice of Defendant's involvement with ETS: (1) ETS's abrupt failure to send dividends to Plaintiff in August 2000; and (2) ETS's bankruptcy filing and proceedings, concerning which Plaintiff indisputably had

notice and received bankruptcy filings, and the subsequent bankruptcy of Foil. These facts would put any reasonable person on notice of the fact that their investment of $91,000 had gone sour and that they must, should they eventually wish to pursue legal action, investigate the circumstances surrounding that investment's failure. Any reasonable investigation would have revealed Foil and ETS's connection with Defendant. Thus, the Court holds as a matter of law that Plaintiff was on inquiry notice of Defendant's involvement with ETS, Foil, and Plaintiff's investment at least as early as June 2002, and possibly earlier.[2] Defendant's Motion is therefore granted as to Plaintiff's first,[3] third, fourth, fifth, sixth, seventh, and eighth causes of action.

Plaintiff's claim of constructive fraud, however, is based upon a breach of a fiduciary duty and falls under a ten-year statute of limitations period. See N.C. Gen. Stat. § 1-56; NationsBank of North Carolina, N.A. v. Parker, 535 S.E.2d 597, 602 (N.C. App. 2000). To maintain a cause of action for constructive fraud, Plaintiff must allege facts and circumstances "(1) which created the relation of trust and confidence, and (2) led up to and surrounded the consummation of the transaction in which defendant is alleged to have taken advantage of his position of trust to the hurt of plaintiff." State ex rel. Long v. Petree Stockton, L.L.P., 499 S.E.2d 790, 798 (N.C. App. 1998); see also Barger v. McCoy Hillard & Parks, 488 S.E.2d 215, 224 (N.C. 1997). In addition, a constructive fraud action requires a showing that "defendant must seek to benefit himself." Barger,

---

[2] The Court need not determine the exact date the statute of limitations began to run, as any possible date is indisputably beyond either the applicable three- or four-year periods.

[3] Although fiduciary duty is part of a constructive fraud claim, which is discussed below, claims of breach of fiduciary duty that do not rise to the level of constructive fraud are governed by the three-year statute of limitations. Babb v. Graham, 660 S.E.2d 626, 627 (N.C. App. 2008). Thus, Plaintiff's claim for breach of fiduciary duty, to the extent that it survives the statute of limitations inquiry, must be seen as part of Plaintiff's second cause of action for constructive fraud.

488 S.E.2d at 215. "The benefit sought by the defendant must be more than a continued relationship with the plaintiff." Sterner v. Penn, 583 S.E.2d 670, 674 (N.C. App. 2003). "[P]ayment of a fee to a defendant for work done by that defendant does not by itself constitute sufficient evidence that the defendant sought his own advantage in the transaction." Parker, 535 S.E.2d at 602. Thus, Plaintiff must allege that Defendant, on its own or through its agents, created a relationship of trust and confidence with Plaintiff, used that relationship to take advantage of and hurt Plaintiff, and that either Defendant or its agents benefitted from that relationship beyond the run-of-the-mill commissions that one would expect a brokerage firm to charge.

The Court holds that Plaintiff's allegations, viewed in light of the current procedural posture, are sufficient to state a plausible claim for constructive fraud. As to the first element, that there be a relationship of trust and confidence, Plaintiff alleges that Defendant's agents undertook a scheme to insinuate themselves into Plaintiff's confidences by building a relationship centered around their church attendance and their commonly held religious and moral beliefs. Plaintiff describes this as "affinity fraud," a term the United States Securities and Exchange Commission ("SEC") defines as "investment scams that prey upon members of identifiable groups, such as religious or ethnic communities, the elderly, or professional groups."[4] According to the SEC, "[t]hese scams exploit the trust and friendship that exist in groups of people who have something in common."[5] Although the Court is not prepared to hold that this sort of affinity fraud necessarily involves the creation and breach of a fiduciary duty, the allegations in the instant case, detailing how Defendant's alleged

---

[4] U.S. Securities and Exchange Commission, Affinity Fraud: How To Avoid Investment Scams That Target Groups, *available at* http://www.sec.gov/investor/pubs/affinity.htm.

[5] Id.

-5-

agents actively exploited religious connections to establish trust and confidence, are sufficient to state a claim for breach of fiduciary duty. Thus, Plaintiff's Complaint satisfies the first element of constructive fraud.[6]

It is indisputable that Plaintiff was harmed by the actions of Defendant's alleged agents. Plaintiff invested $91,000 with ETS, a scheme perpetrated by Foil and whose fraudulent nature Defendant does not dispute. Thus, assuming there was a confidential relationship, Plaintiff was harmed by that relationship.

The final element of constructive fraud is that the defendant benefitted from the harm to the plaintiff. Just as there is no doubt that Plaintiff was harmed by losing her investment with ETS, there is no doubt that Foil, her associates, and her corporation, Foil & Associates, benefitted from Plaintiff's investment. A Ponzi scheme requires the continual generation of new funds through new investors so that dividends can be paid to previous investors, thereby enabling the perpetrators to present their gains as legitimate business profits. In this way, Hollingsworth, Foil, and others benefitted from the harm to Plaintiff because Plaintiff's investment allowed Foil & Associates and ETS to continue to operate. The issue is whether this benefit, flowing from Plaintiff to Foil, can be

---

[6]Defendant argues that its relationship with Plaintiff is a debtor-creditor relationship and, as such, cannot give rise to a fiduciary relationship. (Def.'s Mem., Doc. No. 7, at 6.) Defendant overstates the law, which provides that "an *ordinary* debtor-creditor relationship *generally* does not give rise" to a fiduciary relationship. Branch Banking and Trust Co. v. Thompson, 418 S.E.2d 694, 699 (N.C. App. 1992) (emphasis added). The Court is persuaded that the relationship alleged here is outside the ordinary debtor-creditor context and within the general rule: "The [fiduciary] relation may exist under a variety of circumstances; it exists in all cases where there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence. 'It not only includes all legal relations, such as attorney and client, [etc.,] but it extends to any possible case in which a fiduciary relation exists in fact, and in which there is confidence reposed on one side, and resulting domination and influence on the other.'" Abbitt v. Gregory, 160 S.E. 896 (N.C. 1931) (quoting 25 C.J. § 1119).

imputed to Defendant. The Court is of the opinion that Plaintiff has alleged sufficient facts to establish either that Foil was acting with implied agency authority or that Defendant ratified Foil's conduct after the fact. Should either scenario prove to be supported by the facts alleged, which will no doubt be further developed during the course of discovery, the benefit to Foil can be imputed to Defendant for the purposes of constructive fraud. A principle whose agent has cultivated and used a relationship of trust to defraud numerous victims of large sums of money, and who has either impliedly authorized or ratified said fraud, cannot later avoid liability by claiming that it derived no benefit from its agent's fraudulent activities.

Accordingly, because the Court holds that Plaintiff has alleged sufficient facts to support a claim for constructive fraud, Defendant's Motion is denied as to count two of the Complaint.

## **CONCLUSION**

Plaintiff's causes of action for breach of fiduciary duty, fraud, negligent misrepresentation, unfair and deceptive trade practices, etc., meritorious though they may be, are barred by the applicable statutes of limitations. Defendant's Motion to Dismiss is therefore GRANTED IN PART, and these causes of action are dismissed. Plaintiff's cause for constructive fraud, however, is not time-barred. In addition, the Court holds that Plaintiff has alleged sufficient facts for Plaintiff's constructive fraud charge to proceed through discovery. Defendant's Motion is therefore DENIED IN PART, and Plaintiff may proceed with her second cause of action.

Signed: May 11, 2009

IT IS SO ORDERED.

Frank D. Whitney
United States District Judge